IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-cv-670

CITIES4LIFE, INC.,
*a/k/a* CITIES4LIFE CHARLOTTE;
DANIEL PARKS; and
PATRICK COURTNEY;

      Plaintiffs,

v.

CITY OF CHARLOTTE, et al.,

      Defendants.

ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss (Doc. No. 11) filed jointly by the Defendants. The Plaintiffs have responded, and Defendants have filed a reply. This matter is now ripe for adjudication. For the following reasons, Defendants' Motion is granted in part, denied in part.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Cities4Life, Inc., Daniel Parks, and Patrick Courtney (collectively, "Plaintiffs") brought this civil rights action against: the City of Charlotte; Marcus D. Jones in his official capacity as City Manager of Charlotte ("Jones"); the City of Charlotte Department of Housing and Neighborhood Services ("HNS"); the City of Charlotte Division of Code Enforcement ("DCE"); Ben Krise, individually and in his official capacity as City of Charlotte Code Enforcement Division Manager ("Krise"); Mandy Edwards, individually and in her official capacity as a City of Charlotte Code Enforcement Inspector ("Edwards"); Mark Fowler,

1

individually and in his official capacity as a City of Charlotte Code Enforcement Inspector ("Fowler"); Kimberly Sauer, individually and in her official capacity as a City of Charlotte N&BS Area Supervisor ("Sauer"); and Jane Does 1–5 and John Doe 1, individually and in their official capacities as City of Charlotte employees ("Does") (collectively, "Defendants").

The factual allegations contained in the Complaint are presumed to be true at this stage of the litigation, and thus the Court relies on them for purposes of resolving this motion alone. According to the Complaint, Plaintiff Cities4Life, Inc. ("Cities4Life") is a "faith-based organization that seeks to engage, strengthen, and support local churches and Christians to proclaim, protect, and provide life for unborn babies in each city across the United States where abortion exists." (Compl., ¶ 17). Plaintiff Daniel Parks ("Parks") is the Executive Director of Cities4Life, and Plaintiff Patrick Courtney ("Courtney") is a Missionary for Help Pregnancy Center in Monroe, North Carolina. (Compl., ¶¶ 20, 21).

Cities4Life regularly assembles volunteers and counselors outside of abortion facilities in order to "preach[] the Gospel and speak[] the Truth" to women contemplating an abortion. (Compl., ¶¶ 48–49). Specifically, Cities4Life volunteers hand out information to women going into abortion clinics about "the alternatives to abortion and the means by which they can obtain tangible help in their difficult situation" and pray for "specific immediate needs they encounter in front of abortion centers." (Compl., ¶ 50). As a part of this work, Cities4Life employs the use of signs and placards that are large enough to be seen by individuals entering abortion facilities. (Compl., ¶ 51).

The Charlotte City Code regulates signs within public rights-of-way and on public property. Specifically, the Code provides, in relevant part:

> (a) It shall be unlawful for any person to attach, place, paint, write, stamp or paste any sign within 11 feet of the edge of any pavement of any roadway or alley.

(b) It shall be unlawful for any person to attach, place, paint, write, stamp or paste any sign within any public rights-of-way.
(c) It shall be unlawful for any person to attach, place, paint, write, stamp or paste any sign upon any post, pole, tree, tree stake or guard, shrub, or fire hydrant.
(d) It shall be unlawful for any person to attach, place, paint, write, stamp or paste any sign upon anything else within 11 feet of the edge of the public rights-of-way, upon any bridge or overpass within the city limits, or upon other public property including, but not limited to, traffic medians.
(e) *Exceptions*. This section shall not apply to the following signs:
   1. Signs regulating traffic.
   2. Signs required to be posted by law.
   3. Warning signs and no trespassing signs.
   4. Signs indicating bus stops, taxi stands and similar transportation facilities.
   5. Signs not exceeding four square feet in area giving information concerning the location or use of accessory off-street parking facilities or loading and unloading facilities.
   6. Signs established by governmental agencies.
   7. Signs permitted by the state board of transportation along state-mandated streets. Proof of permission must be shown upon request.
   8. Nothing in this section shall apply to the painting of house numbers on curbs done with the prior approval of the engineering department.
   9. Nothing in this section shall apply to the installation of a plaque, plate, statue, or monument on public property with the approval of the city council.
   10. Nothing in this section shall apply to the removal of an illegally placed sign which is in violation of this section.
   11. A violation of any provision of this section shall not constitute an infraction or misdemeanor punishable under G.S. 14-4.
(f) *Responsible person*. The responsible person for any signs in violation of subsection (a) through (d) is defined as follows:
   1. In the case of a sign advertising a service, product, dwelling, or event, the responsible person shall be deemed the person hosting or organizing the event or the person attaching, placing, painting, writing, stamping, or pasting any sign. Violation of this section shall subject the responsible person to a civil penalty of $100.00 per sign.

Charlotte, N.C., Code § 10-141 (June 6, 2018).[1]

---

[1] At the time the Complaint was filed, this provision was listed as § 10-212. *See* Charlotte, N.C., Code § 10-212 (August 31, 2016), available at: https://library.municode.com/nc/charlotte/codes/code_of_ordinances/264937?nodeId=PTIICOOR_CH10HESA_ARTIISOWASE_DIV6MAPRLICO_S10-212SIWIPURI-WPUPR. Thus, the Complaint and briefs of both parties refer to the code provision as § 10-212. However, the city code was amended, and the provision is now listed as § 10-141. It appears to the Court that the language supporting the suit remains unchanged. Further, neither party has argued that the amendments moot the dispute. Accordingly, the Court will refer to the provision at issue as § 10-141 to reflect the code provision as it currently exists.

On June 29, 2017, Parks led a team of Cities4Life volunteers to hand out information on public property near an abortion clinic called A Preferred Women's Health Center of Charlotte ("Preferred Women's Health"). Defendants Krise and Fowler arrived and confiscated and subsequently destroyed a canopy belonging to Cities4Life. The canopy was not blocking any right of way, and it was not affixed permanently or semi-permanently.

On July 5, 2017, Parks and Cities4Life again engaged in their activities near Preferred Women's Health and three officials from the DCE arrived and began issuing citations for violation of City Code § 10-212. Parks received two citations on this date for allegedly violating City Code § 10-212, both of which were signed by Defendant Edwards. Defendant Sauer explained that one citation was being issued because "a placard was resting on an individual's shoes without her feet actually being inside her shoes." (Compl., ¶ 86). The officials also seized and destroyed the placards used by Cities4Life.

On July 11, 2017, Parks and Cities4Life again engaged in their activities near Preferred Women's Health. Officials from the DCE arrived, seized two placards that were leaning against a vehicle, and subsequently destroyed them. When a volunteer sat on a sign, the officials declined to take it, stating that because it was no longer being "displayed," there was no violation of any ordinance. (Compl., ¶ 91).

Similar seizures and destruction of placards belonging to individuals associated with Cities4Life occurred on August 8, 2017, and August 18, 2017. And on September 16, 2017, both pro-life and pro-choice groups marched in the vicinity of Preferred Women's Health carrying flyers and signs. City officials arrived and issued citations to individuals affiliated with the pro-life protesters, but not to pro-choice protesters.

On November 5, 2017, Parks was issued two additional citations by members of the DCE, including Defendant Krise, while displaying signs on public property in the vicinity of Preferred Women's Health.

Additionally, in the summer of 2017, Courtney spent time "peacefully praying, preaching, and further exercising his First Amendment rights on public property" near Preferred Women's Health. He brought a sign with him, and he held it upright with his hands while the bottom of the sign rested on the ground. Three officials from the DCE arrived and approached Courtney. Courtney then put his sign on the ground and sat on it "to protect his property from the city officials." (Compl., ¶ 110). The DCE members demanded that he turn over his sign, and he refused to do so. The officials then left. Courtney alleges that this "threat to take his property" has made him "fear he will lose his ability to exercise his First Amendment rights and that the city will confiscate his property." (Compl., ¶ 115).

### B. Procedural Background

As stated above, Parks received two citations for violating § 10-141 on July 5, 2017 and two additional citations for violating § 10-141 on October 5, 2017, each carrying a $100 fine. On August 4, 2017, Parks requested an appeal of the first pair of citations issued to him and reimbursement for the cost of the destroyed placards on behalf of Cities4Life. On October 4, 2017, the City of Charlotte reimbursed the cost of the destroyed property to Parks without admitting any wrongdoing. On November 9, 2017, Parks again requested an appeal of the July 5 citations as well as an appeal of new citations that had been issued to him on October 5, 2017. Shortly thereafter, on December 11, 2017, the City of Charlotte rescinded the July 5 citations and granted Parks' request for an appeal of his October 5 citations subject to his compliance with the ordinance appeal provisions, including a bond payment.

5

In the meantime, however, Plaintiffs filed their Complaint in this matter on November 11, 2017. The Complaint alleges that Defendants, through their enforcement of § 10-141, violated the First Amendment of the Constitution; the Due Process and Equal Protection Clauses of the Fourteenth Amendment; Article I, Section 1 of the North Carolina Constitution; Article I, Section 14 of the North Carolina Constitution; and Article I, Section 19 of the North Carolina Constitution. Specifically, Plaintiffs claim that they have "a present and future desire and intention to engage in lawful First Amendment activity" but "fear being cited by Defendants." (Compl., 25).

Defendants now move to dismiss Plaintiff's claims for lack of subject matter jurisdiction. Defendants claim that the claims of Parks and Cities4Life are not ripe because Parks has invoked an appeal of his citations in an administrative hearing, even though he has not yet pursued this appeal by filing the requisite bond payments. Defendants further argue that Courtney lacks standing in this case and that the claims of Parks and Cities4Life should be dismissed under the *Younger* abstention doctrine.

## II. STANDARD OF REVIEW

Federal courts have limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss for lack of subject matter jurisdiction must be granted if the court lacks statutory authority at any time to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the defendant contends the pleading fails to allege facts upon which subject matter jurisdiction can be based, then "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is

6

afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* If the defendant argues that the jurisdictional allegations of the complaint are untrue, a court "may then go beyond the allegations of the complaint" and "determine if there are facts to support the jurisdictional allegations." *Id.*

### III. DISCUSSION

#### A. Ripeness: Parks and Cities4Life

Defendants first argue that the claims raised by Parks and Cities4Life are not ripe because the City of Charlotte has not yet made a "final decision" whether the activities of Parks and Cities4Life violated § 10-141.

Generally, a court assessing ripeness must "balance the fitness of the issues for judicial decision with the hardship of the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)). Thus, "[a] claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Id.* (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)). However, "like standing, ripeness requirements are also relaxed in First Amendment cases." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013). This is because even a "chilling effect" of potential enforcement may unconstitutionally burden free speech. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995).

Defendants argue that Parks and Cities4Life have no ripe claim because Parks could still post the requisite bond and proceed with an administrative appeal with the City of Charlotte. In such appeal, Parks could raise the same constitutional arguments in opposition to enforcing § 10-

7

141 against him as he does in this matter. According to the Defendants, this makes any injury suffered by Parks and Cities4Life "wholly speculative."

While Defendants are correct in noting that Parks has the opportunity to appeal his two remaining citations to a city administrative body, Defendants' arguments are clearly foreclosed by the Fourth Circuit's decisions in *Cooksey*, 721 F.3d 226, and *Virginia Society for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001), *overruled on other grounds by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012).

In *Cooksey*, the plaintiff had created a website to share his experiences and advice in coping with Diabetes, as well as a fee-based "Life-Coaching" service for individualized advice and moral support. 721 F.3d at 230. The State Board instructed the plaintiff to remove certain portions of his website in compliance with dietician licensing requirements and regulations. *Id.* at 231. He complied with the instructions "because he feared civil and criminal action against him," *id.*, and then he subsequently filed suit claiming that the licensing regulations were unconstitutional on their face and as applied to him by the State Board. The Fourth Circuit found that the plaintiff's claim was ripe even though he had not been subjected to any actual enforcement or punishment pursuant to the licensing regulations because his claims "present[ed] the question of whether the Act and actions of the State Board unconstitutionally infringe on [his] rights to maintain certain aspects of his website." *Id.* at 240–41. Although the State Board argued that further review by the Board was needed before the claim could become ripe, the Fourth Circuit found that the State Board had already "manifested its views" that the regulations applied to his website by instructing the plaintiff to "change it in accordance with the red-pen review or face penalties." *Id.* at 241.

Here, Parks and Cities4Life allege that they have been actually subjected to enforcement proceedings by the City of Charlotte and the DCE on multiple occasions under the authority of § 10-141: (1) Defendants seized and destroyed a canopy from Cities4Life on June 29, 2017; (2) Defendants issued two citations to Parks on July 5, 2017, and seized and destroyed placards belonging to Cities4Life; (3) Defendants seized and destroyed two placards belonging to Cities4Life on July 11, 2017; and (4) Defendants issued two more citations to Parks on November 5, 2017. And their Complaint clearly alleges that as a result of Defendants' conduct, their "speech and message are effectively suppressed and silenced." (Compl., 24). Thus, their as-applied challenges to § 10-141 are clearly ripe under the analysis of *Cooksey*, 721 F.3d 226. *See also Peachlum v. City of York, Pa.*, 333 F.3d 429, 436 (3d Cir. 2003) ("We recognize that free speech may be suppressed and a concrete injury may occur merely as a result of the initiation of enforcement proceedings. We do not now hold that administrative finality applies in such cases.").

The facial challenges to § 10-141 raised by Parks and Cities4Life are even more evidently ripe. A facial challenge to a regulation that "has the force of law" and carries criminal or civil penalties is generally a "purely legal" question that does not require further factual development. *See Va. Soc. for Human Life*, 263 F.3d at 390; *see also Peachlum*, 333 F.3d at 436 ("[A] *facial* First Amendment challenge is not normally subject to administrative finality analysis under any circumstances."). Here, Parks and Cities4Life have clearly alleged that § 10-141, on its face, violates their free speech rights, and thus this claim is also ripe for review at this time.

## B. Standing and Ripeness: Courtney

Defendants also argue that Plaintiff Courtney lacks standing in this matter.

Generally, a plaintiff seeking to establish standing must show that (1) he has suffered an injury in fact, (2) that there is a causal relationship between the injury and the conduct complained of, and (3) that it is likely that the injury will be redressed by a favorable decision. *Cooksey*, 721 F.3d at 234–35. Defendants argue that Courtney has not established the first element, claiming that he has not suffered any past injury and that he has not sufficiently alleged a prospective chilling of his speech.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Courtney has alleged that DCE officials encountered him while he was holding a sign and praying, "demanded" that he turn over the sign, and that he had to put his sign down and sit on it in order to "protect" it from the officials. (Compl., ¶ 110). Courtney alleges that this "threat to take his property" has made him "fear he will lose his ability to exercise his First Amendment rights and that the city will confiscate his property." (Compl., ¶ 115). Further, he alleges (along with Parks and Cities4Life) that his "speech and message are effectively suppressed and silenced," that he has a "present and future desire and intention" to display signs near abortion clinics but "fear[s] being cited by Defendants," and that his speech has been chilled. (Compl., 118, 121 & 125). Courtney has clearly sufficiently alleged at least a "minimal" deprivation of his freedom of speech and a prospective chilling based on the terms of § 10-141 to support his standing in this matter.

Courtney's claims are also ripe for the same reasons. He has sufficiently alleged a past injury through the deprivation of his freedom of speech by the DCE officials.

### C. *Younger* Abstention: Parks and Cities4Life

Defendants next argue that this Court must abstain from resolving the claims of Parks and Cities4Life in this matter under the doctrine of *Younger* abstention. *See Younger v. Harris*, 401 U.S. 37 (1971).

The Supreme Court in *Younger* held that, pursuant to "Our Federalism" and a "proper respect for state functions," federal courts should not enjoin pending criminal proceedings in state courts "except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate." 401 U.S. at 44–45. This doctrine has been extended to prevent interference with certain types of state civil actions and administrative proceedings as well. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986). However, the general rule is that abstention does not normally apply to a federal case merely because a "pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Rather, circumstances warranting *Younger* abstention are "exceptional," limited to cases where there are: (1) "parallel, pending state criminal proceedings;" (2) "particular state civil proceedings that are akin to criminal prosecutions; or (3) proceedings that implicate a State's interest in enforcing orders and judgments of its courts." *Id.* at 72–73 (internal citations omitted). Defendants argue that this matter fits within the second category of cases warranting abstention.

The primary test for a court in this context is to determine whether the relevant state proceeding is "quasi-criminal" in nature. *Id.* at 81. State proceedings that are akin to criminal prosecutions are characteristically intended to "sanction the federal plaintiff . . . for some wrongful act," are generally initiated by a state actor, and often involve investigations that "culminat[e] in the filing of a formal complaint or charges." *Id.* at 79–80. Additionally, the

11

Supreme Court has instructed courts to consider whether the state proceeding is still ongoing, implicates "important state interests," and provides "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). These three *Middlesex* requirements are not dispositive, but they are "*additional* factors appropriately considered" before invoking *Younger*. *Sprint*, 571 U.S. at 81 (emphasis in original). "Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings," which is "irreconcilable with [the] dominant instruction that . . . abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Id.* at 81–82 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).

The Court finds that abstention clearly does not apply to Cities4Life's claims. The citations at issue were only directed to Parks—not to Cities4Life as an organization. Further, while Cities4Life did join Parks in his notice of appeal to the City of Charlotte, Cities4Life merely requested reimbursement for the value of destroyed placards and signs. Nothing about Cities4Life's request for reimbursement is "quasi-criminal" in nature. Rather, it was initiated by Cities4Life and risked no sanction or filing of charges.

Further, the City of Charlotte granted this request and reimbursed $565.00 for the destroyed property. (*See* Doc. No. 11-1, Exh. 5). Defendants have not shown that Cities4Life has subsequently requested any further reimbursement. Thus, even if Defendants were correct that Cities4Life's request for reimbursement created a state proceeding within the scope of *Younger* abstention, it is clear that such proceeding is no longer ongoing in light of the fact that Cities4Life obtained their reimbursement on or about October 4, 2017—more than a month

before Cities4Life filed the instant suit. Thus, its prior (and fulfilled) request for reimbursement is in no way a state civil proceeding akin to criminal prosecution that warrants abstention.

Next, the Court finds that Parks' notice of appeal of his citations also does not rise to the level of a quasi-criminal proceeding to which *Younger* abstention must be applied. A fundamental element of a quasi-criminal proceeding is that it must be judicial in nature. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989). At the time this case was filed, the procedure for appealing a citation received for a § 10-141 violation was codified as Charlotte, N.C., Code § 10-66 (August 31, 2016).[2] Nothing in this provision enumerates any procedures or standards of proof to which the City of Charlotte would be held to prove their case against Parks. Further, no formal complaint was filed against Parks, and no Code provision guarantees the opportunity for Parks to present witnesses and exhibits. *See Harper v. Pub. Serv. Comm'n of W. Va.*, 291 F.Supp.2d 443, 455 (S.D. W. Va. 2003), *rev'd on other grounds by* 396 F.3d 348 (4th Cir. 2005). And no provision gives the "neighborhood development key business executive or his designee"—a local volunteer who serves as "hearing officer"—any authority to enter orders, subpoena witnesses and compel their attendance, compel the production of documents, or make findings of fact. *See Sutton v. N.C. State Bar*, No. 5:14-CV-243-BR, 2014 WL 4546017, at *6 (E.D.N.C. Sep. 12, 2014) (listing these factors as evidence that a proceeding was judicial in nature). Accordingly, this Court finds that such a hearing would not truly be "judicial" in nature, and therefore abstention is not warranted with respect to the availability of an appeal of Parks' citation.

---

[2] This procedure has been amended and is now codified as Charlotte, N.C., Code § 10-104. However, because the older version (§ 10-66) contained the procedures applicable at the time Parks brought this suit, the Court relies on § 10-66 to evaluate whether the relevant proceedings were "ongoing" and "quasi-criminal" in nature. *See Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 738 F.Supp. 1140, 1143 (M.D. Tenn. 1990) ("[T]he proper point of reference for determining whether state proceedings are 'ongoing' is the date the federal complaint is filed.").

Additionally, the Court notes that the purposes of abstention pursuant to *Younger* would not be served in this matter. First, even if the appeals process was a judicial forum warranting abstention with respect to Parks' as-applied claims, the as-applied claims of Cities4Life and Courtney could not be addressed in that forum. Thus, even if the Court required Parks to pursue a final administrative ruling, Cities4Life and Courtney's claims would continue which would create parallel state and federal proceedings. This result directly defies the goals of *Younger*.

Further, Plaintiffs have shown that facial challenges to the constitutionality of § 10-141 could be not be adequately addressed in that forum. Rather, as Plaintiffs have pointed out, it is settled North Carolina law that "[w]here an aggrieved party challenges the constitutionality of a regulation or statute, administrative remedies are deemed to be inadequate and exhaustion thereof is not required." *Shell Island Homeowners Ass'n, Inc. v. Tomlinson*, 517 S.E.2d 406, 412 (N.C. Ct. App. 1999). Thus, the State of North Carolina itself would find the administrative appeals process to be an inadequate forum to raise a constitutional challenge to one of its statutes. Accordingly, the third *Middlesex* factor also weighs against abstaining in this matter.

Accordingly, the Court finds that *Younger* abstention is not warranted.

### D. Liability of HNS and DCE

Finally, Defendants argue that all claims must be dismissed against Defendants HNS and DCE.

It is clear that HNS and DCE are divisions of the City of Charlotte that lack the capacity to be sued, and that, as City divisions, they would be bound by any ruling made with respect to the City of Charlotte. *See Lineberger v. Newton Police Dep't*, 5:14-cv-137-RLV-DCK, 2016 WL 5376290, at *3 (W.D.N.C. Sep. 23, 2016).

Accordingly, the Court will dismiss all claims against HNS and DCE.

14

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 11) is **GRANTED IN PART, DENIED IN PART.**  All claims with respect to Defendants Department of Housing and Neighborhood Services (HNS) and City of Charlotte Division of Code Enforcement (DCE) are **DISMISSED.**  The clerk of court is directed to terminated Defendants HNS and DCE from this case.

**SO ORDERED.**

Signed: September 18, 2018

Graham C. Mullen
United States District Judge