# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## Case No. 3:17-cv-670-KDB-DSC

| | |
|---|---|
| CITIES4LIFE INC. a/k/a <br> CITIES4LIFE CHARLOTTE et. al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHARLOTTE et. al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on the Individual Defendants' Motion to Dismiss (document #51), Defendants' Partial Motion to Dismiss (document #49), and the parties' briefs and exhibits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be granted as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the allegations of the Complaint as true, Plaintiffs CITIES4LIFE, its Executive Director, and associated individuals gather near a women's health clinic in Charlotte to express their opposition to abortion and communicate with patients. Plaintiffs display signs, distribute literature, and engage in other activities to express their opposition to abortion and to dissuade women from visiting the clinic.

1

On May 10, 2019, Plaintiffs' filed a Second Amended Complaint against Defendants under federal law and the North Carolina Constitution. In addition to suing the City, Plaintiffs bring claims against: (1) Charlotte Mayor Vi Lyles and City Manager Marcus D. Jones in their official capacities and (2) City Employees Ben Krise, Mandy Edwards, Mark Fowler, Kimberly T. Sauer, Jane Does Nos. 1-5, and John Doe No. 1 (collectively the "Employees") in their official and individual capacities.

On May 24, 2019, Defendants filed a Partial Motion to Dismiss two claims in the Second Amended Complaint (Doc. # 48) under F.R.C.P. 12(b)(6). Plaintiffs' claim that the City's Zoning Ordinance substantially burdens the exercise of their religion within the meaning of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and that the City's Picketing Ordinance is unconstitutionally vague and overbroad.

On May 24, 2019, the Individual Defendants filed a Motion to Dismiss all claims against them in the Second Amended Complaint. The Individual Defendants argue that the official capacity claims against the officials and employees should be dismissed as duplicative. The Motion also argues that Plaintiffs' individual capacity claims against the Employees should be dismissed. These claims concern the City's Sign Ordinance that generally prohibits placing signs in public rights-of-way.

## II. DISCUSSION

### A. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard.  First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief.  Id. at 679.  "Determining whether a complaint contains sufficient facts to state a plausible claim for relief

3

"will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### B. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

#### 1. THE OFFICIAL CAPACITY CLAIMS SHOULD BE DISMISSED AS DUPLICATIVE.

"Official capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted). Plaintiffs allege that Defendant Vi Lyles is the City's Mayor, Defendant Marcus D. Jones is the City Manager, and the Employees all work for the City. See Second Amended Complaint, ¶¶ 34-41. Consequently, the official capacity claims against these individuals are in substance claims against the City itself. Because the City is also a Defendant, these official capacity claims should be dismissed as duplicative. "The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent

4

is essentially a claim against the Board and thus should be dismissed as duplicative." Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (citations omitted) (affirming dismissal of official capacity claim against school superintendent because superintendent's employer, the school board, was also a defendant); see also Schaeffer v. County of Chatham, 337 F.Supp.2d 709, 721 (M.D.N.C. 2004) ("Because official capacity suits are essentially suits against the entity itself, they may be dismissed, where, as here, the government entity is sued.") (citations omitted).

Plaintiffs do not object to dismissal of their federal official capacity claims, "so long as the City clearly stipulates (or this Court rules) that the City will be bound by any order or judgment issued by the Court." Plaintiffs' Response, p. 7. They also consent to dismissal of their state official capacity claims on the same condition. See id., pp. 7-8. As a result, all official capacity claims should be dismissed.

### 2. THE INDIVIDUAL CAPACITY CLAIMS AGAINST THE EMPLOYEES SHOULD BE DISMISSED.

Plaintiffs do not contest dismissal of the individual capacity claims to the extent they rest on alleged defects in the Sign Ordinance itself. Plaintiffs, in fact, contend that their individual capacity claims do not arise from the Sign Ordinance's alleged constitutional defects:

> The Individual Defendants incorrectly assume that they have been sued simply because they were involved in enforcement of the Sign Ordinance against plaintiffs. This is not true. It is not plaintiffs' contention that every Code Enforcement official who has enforced the Sign Ordinance is individually liable under 42 U.S.C. § 1983 simply because the Sign Ordinance is constitutionally defective.

Plaintiffs' Response, p 8. But Plaintiffs' pleadings say otherwise. Count I of their Second Amended Complaint rests entirely on the Sign Ordinance's alleged "Facial Unconstitutionality." See Second Amended Complaint, pp. 47-48. This Count is asserted not just against the City, but also against the Employees. "By reason of City Code § 10-141 (and its predecessor ordinance), which has been created, adopted, and enforced under color of state law, the City and other

5

Defendants have deprived and continue to deprive Plaintiffs of their right to engage in free speech[.]" Second Amended Complaint, ¶ 223 (part of Count I). Plaintiffs did sue the Employees based upon their enforcement of the allegedly defective Sign Ordinance.

As Defendants have argued, the Sign Ordinance is constitutional. Even if it were not, the Employees would have qualified immunity for enforcing it. Neither the Sign Ordinance nor any comparable ordinance has ever been invalidated. See Memorandum of Law Supporting the Individual Defendants' Motion to Dismiss the Second Amended Complaint ("Supporting Memorandum of Law") (Doc.# 52), pp. 7-17. Qualified immunity protects public employees who make good-faith mistakes in interpreting and applying the law. If a public employee violates an individual's rights, the employee is personally liable only if the rights violated were clearly established, such that a reasonable public employee should have known that the conduct at issue was unlawful. A public employee is not personally liable for mistakes in areas where the law is unclear. Even if a court ultimately decides that the employee acted unlawfully, if the illegality of the employee's action was unclear when it occurred, the employee is personally immune from suit:

> Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity protects law enforcement officers from liability for bad guesses in gray areas and ensures that they will be held liable only for violating bright-line rules. It operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.

Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) (citations and quotation marks omitted) (correctional officer entitled to qualified immunity because his use of force did not clearly violate law at time it occurred). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate."

6

Case 3:17-cv-00670-KDB-DSC   Document 61   Filed 07/26/19   Page 6 of 17

Reichle v. Howards, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citations, quotation marks, and brackets omitted).  The Fourth Circuit has explained that qualified immunity protects public employees except where their actions were "clearly forbidden" by law.  Occupy Columbia v. Haley, 738 F.3d 107, 118 (4th Cir. 2013).  And in illustrating the immunity's breadth, the Supreme Court has held that, "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  Mullenix v. Luna, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (citation omitted).

Plaintiffs disclaim any intent to sue the Employees based upon alleged defects in the Sign Ordinance.  See Plaintiffs' Response, p. 8.  Count I against the Employees, however, rests upon those very alleged defects.  Consequently, Count I should be dismissed with respect to the Employees. The Employees have also argued that they cannot be sued in their individual capacities for declaratory or injunctive relief.  See Supporting Memorandum of Law, p. 17, n. 6.; See, e.g., Davidson v. U.S. Dep't. of State, 113 F. Supp.3d 183, 194 (D.D.C. 2015) ("It is well established that there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity.") (citations omitted); Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989) ("Moreover, the equitable relief Feit requests—a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals.") Plaintiffs' Response offers no rebuttal. As a result, Count XIV against the Employees should also be dismissed.

Plaintiffs' remaining claims against the Employees rest on two contentions: (i) the Employees acted out of prejudice and (ii) the Employees violated clearly established law when

they enforced the Sign Ordinance despite Plaintiffs not having violated it. Neither contention is supported by sufficient factual allegations to be plausible.

To support their claims of prejudice, Plaintiffs allege that the Employees enforced the Sign Ordinance against them. Plaintiffs contend that the Employees "clearly engaged in conduct so egregious that it would result in a loss of qualified immunity." Plaintiffs' Response, p. 8. When Plaintiffs catalogue their allegations against the Employees, they fail to plead any facts showing invidious motives. See id., pp. 9-11. Plaintiffs allege only that the Employees issued citations and seized signs belonging to them that the Employees determined violated the Sign Ordinance. See id. Although those signs were allegedly destroyed, Plaintiffs do not allege that the Employees were personally involved in their destruction. See id.

These allegations do not show prejudice. The Employees are not alleged to have said or done anything evidencing prejudice against Plaintiffs, their message, or Christians in general. Rather, the Employees' actions simply involve good faith enforcement of the Sign Ordinance:

> The complaint must, however, plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. Without such heft, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are merely consistent with a defendant's liability fail to nudge claims across the line from conceivable to plausible.

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (quotation marks omitted) (emphasis added); see also McCleary-Evans v. State Dep't. of Transp., 780 F.3d 582, 588 (4th Cir. 2015) ("[A] complaint must allege more than a sheer possibility that a defendant has acted unlawfully.") (quoting Iqbal) (quotation marks omitted).

8

Case 3:17-cv-00670-KDB-DSC   Document 61   Filed 07/26/19   Page 8 of 17

Plaintiffs argue that the Employees were wrong to have taken these enforcement actions. Even if the Employees were wrong, that is not evidence of prejudice and does not subject public employees to personal liability.

Plaintiffs further argue that prejudice can be imputed to the Employees from elected officials. Plaintiffs contend that a former Mayor was biased against them and that her alleged bias "tainted" the Employees:

> With the then-Mayor having admitted to being a moving force behind new enforcement activity, it defies belief the Individual Defendants, who shortly thereafter engaged in new and aggressive enforcement action, have not been tainted with unconstitutional bias and animus themselves and were not following through on the work the then-Mayor described when they began taking action in the summer of 2017.

Plaintiffs' Response, pp 14-15. Plaintiffs contend that public employees, themselves not alleged to be biased, can be held personally liable for the alleged bias of local elected officials. From this viewpoint, unbiased public employees operating in good faith could be held personally liable for something beyond their control - the alleged bias of elected officials. There is no authority for this proposition.

Plaintiffs allege that some Employees submitted "false and inflammatory" affidavits in opposition to their motion for preliminary injunction. See Plaintiffs' Response, p. 15. Plaintiffs have not plausibly alleged that any statements in the Employees' affidavits were false. The Employees merely stated that protestors at the clinic have insulted them and engaged in other wrongdoing. See Exhibit 1.3 The Employees did not specifically accuse Plaintiffs of those actions, but rather unidentified protestors. Protests at the clinic are an almost daily occurrence and have been ongoing for years. Depending on when they were present, Plaintiffs and the Employees may have seen and experienced different events. Plaintiffs have no grounds to accuse the Employees of falsity.

9

Plaintiffs otherwise do not explain why the Employees' affidavits supposedly "constitute[] evidence of bias against plaintiffs, not the dispassionate enforcement of City ordinances." Plaintiffs' Response, p. 15. Submission of those affidavits is not evidence that the Employees are hostile to Plaintiffs' religion or messages. Since Counts II, III, and XIII depend on Plaintiffs' unsupported claims of prejudice, they should be dismissed with respect to the Employees.

Plaintiffs' final contention is that the Employees violated clearly established law by enforcing the Sign Ordinance against them despite their never having violated the ordinance. Here as well, Plaintiffs fail to allege sufficient facts to make this claim plausible. Plaintiffs' claims against the Employees are based on six alleged enforcement actions from the summer of 2017 through the fall of 2018. See Second Amended Complaint, ¶¶ 80-131. Plaintiffs' allegations about these incidents fail to plausibly allege that they were not violating the Sign Ordinance and that the enforcement action violated clearly established law. Accordingly, the undersigned respectfully recommends that the Individual Defendants' Motion to Dismiss (document #51) be granted.

### C. DEFENDANTS' PARTIAL MOTION TO DISMISS

#### 1. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A RLUIPA SUBSTANTIAL BURDEN CLAIM.

Defendants have addressed Plaintiffs' failure to plausibly allege multiple elements necessary for a RLUIPA substantial burden claim. See "Memorandum of Law Supporting Defendants' Motion to Partially Dismiss the Second Amended Complaint" ("Supporting Memorandum of Law") (Doc. # 50), pp. 3-9. Plaintiffs' rebuttals do not overcome the deficiencies in their pleadings.

Plaintiffs contend that they had a reasonable expectation of displaying portable signs on their lot, even though the Zoning Ordinance imposed a pre-existing ban on such signs. Plaintiffs

assert that "it requires no small measure of administrative interpretation to conclude that a ban on 'portable signs' as part of the City's zoning ordinance also precludes temporary placement of signs on private property incident to First Amendment activities." Plaintiffs' Response, p. 10. Section 13.105 of the Zoning Ordinance prohibits portable signs on any property in the City, while Section 13.102 defines "portable sign" as a "sign that is not permanently attached to the ground, a structure, or a building that can easily be moved from one location or another. For example, a sign on wheels." See Exhibit 1. Plaintiffs' allegations do not dispute that the signs on their lot qualified as "portable signs," nor do they explain why the Zoning Ordinance did not provide them with sufficient notice that those signs would be prohibited. See Second Amended Complaint, ¶¶ 174-88. Nor do Plaintiffs allege that they reviewed the Zoning Ordinance or made any inquiry as to what was allowed under the ordinance before they placed any signs. Plaintiffs had no reasonable expectation of displaying signs that are prohibited throughout the city, and the lack of such a reasonable expectation bars their substantial burden claim. See Andon, LLC v. City of Newport News, Virginia, 813 F.3d 510 (4th Cir. 2016) (RLUIPA substantial burden claim requires frustration of "reasonable expectation" to use of property).

Plaintiffs also contend that the Zoning Ordinance's portable sign ban imposes a substantial burden on their religious exercise. However, Plaintiffs' fail to explain why they cannot use other types of signs on their lot. They have not shown that permissible signs would be any less effective than portable ones. See Supporting Memorandum of Law, p.7. Plaintiffs do not explain how their inability to display a particular type of sign substantially burdens their religion. See Plaintiffs' Response, pp. 11-12. Instead, Plaintiffs emphasize that the City is allegedly "restricting their use of signs on public property, restricting their ability to pass out literature, and restricting them to standing behind barricades on certain days." See Plaintiffs' Response, p. 12. Those actions are

11

occurring on public streets and sidewalks and not on Plaintiffs' lot.  See Second Amended Complaint, ¶¶ 148-73.

Plaintiffs allege an interstate commerce nexus for purposes of RLUIPA because: (i) Plaintiff Cities4Life operates in, and draws support from, other states and (ii) the Latrobe Drive clinic providing abortions is an interstate activity and women visit the clinic from other states.  See Plaintiffs' Response, pp. 13-14.  The issue is not whether Cities4Life's or the clinic's activities generally affect interstate commerce.  The issue is whether application of the portable sign ban itself affects interstate commerce.  See 42 U.S.C. § 2000cc(a)(2)(B) (RLUIPA applies only if "the substantial burden affects, or removal of that substantial burden would affect, commerce … among the several States[.]")  Plaintiffs have not plausibly alleged how their inability to display a particular type of sign on a single Charlotte lot affects Cities4Life's operations elsewhere or the support that it draws from other states.  Plaintiffs' Second Amended Complaint does not allege that the Latrobe Drive clinic serves women from other states or otherwise affects interstate commerce.  See Second Amended Complaint. Plaintiffs' have not plausibly pleaded an interstate commerce nexus.

Plaintiffs' allege that another RLUIPA requirement is met, namely that "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."  42 U.S.C. § 2000cc(a)(2)(C).  This "individualized assessment" requirement is not met because the Zoning Ordinance's ban on portable signs is universal.  It applies to all properties.  See Supporting Memorandum of Law, pp. 8-9.  Plaintiffs respond that the portable sign ban nonetheless "is subject to individualized determinations as to whether it has been violated[.]"

12

Plaintiffs' Response, p. 13. That is true of every land use regulation. Deciding whether a particular property has violated a regulation will always require some fact-specific inquiry. If that alone satisfied 42 U.S.C. § 2000cc(a)(2)(C)'s "individualized assessment" requirement, it would render RLUIPA's entire "scope of application" provision in 42 U.S.C. §2000cc(a)(2) meaningless. RLUIPA's scope would be all-encompassing. It would automatically apply to every land use regulation in the country.

Rather, 42 U.S.C. §2000cc(a)(2)(C) applies only where there are "individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C) (emphasis added). The provision is not concerned with individualized assessments of violations, but instead with those individualized assessments that occur when a landowner seeks prospective approval for a proposed land use. For example, North Carolina law recognizes a conditional use permit, which requires a property owner to submit a development proposal for the property that is then assessed by the government using standards specified in the zoning ordinance. See, e.g., Innovative 55, LLC v. Robeson County, N.C. App., 801 S.E.2d 671 (2017) (discussing conditional use permits). That kind of prospective development approval is what is contemplated by 42 U.S.C. § 2000cc(a)(2)(C)'s individualized assessment requirement, not after-the-fact inquiries into whether a land use regulation has been violated.

Plaintiffs also argue that the portable sign ban implicates "individualized assessments" for purposes of 42 U.S.C. § 2000cc(a)(2)(C) because the prohibition "is further subject to waiver by variance upon analysis of seven different factors described in the ordinance." Plaintiffs' Response, p. 13. This is incorrect. Although North Carolina law authorizes cities to grant zoning variances, "no change in permitted uses may be authorized by variance." N.C. Gen. Stat. § 160A-381(b1). Variances can alter a zoning ordinance's quantitative requirements such as required setback sizes,

13

but they cannot authorize uses of property that the zoning ordinance prohibits. If someone sought a variance to allow a portable sign in Charlotte, no individualized assessment would be needed. The request would be denied because the ordinance prohibits such signs. Implementation of the Zoning Ordinance's portable sign ban does not involve the kind of "individualized assessments" contemplated by 42 U.S.C. § 2000cc(a)(2)(C).

Plaintiffs ultimately argue that their religious exercise has been substantially burdened because they cannot do something that no one else in Charlotte can do - display portable signs on private property. They have not plausibly alleged any reasonable expectation to display such signs, that an inability to display such signs substantially burdens their religion, and that RLUIPA's "scope of application" requirements are met. Their RLUIPA substantial burden claim should be dismissed.

### 2. **THE PICKETING ORDINANCE'S USE OF "INTERFERE" IS NOT VAGUE ON ITS FACE OR OVERBROAD.**

Plaintiffs' claims that the Picketing Ordinance is invalid on its face fail to satisfy F.R.C.P. 12(b)(6) and should be dismissed. Plaintiffs argue that the City's Picketing Ordinance is facially invalid for vagueness due to its use of the term "interfere." Plaintiffs' Response makes clear that they do not contend that the word "interfere" is itself impermissibly vague. Rather, they contend that the police department has adopted an "expansive and unreasonable" interpretation of "interfere," one that "define[s] the term to include mere advocacy in the form of speaking and distributing literature in a peaceful, non-aggressive matter." Plaintiffs' Response, pp. 15, 18. Plaintiffs argue that this "expansive" interpretation may be considered in their facial challenge to the ordinance because the Supreme Court and other courts have held that facial challenges must

14

consider "the government's authoritative constructions of the ordinance, including its own implementation and interpretation of it." Plaintiffs' Response, p. 17 (citations omitted).

In the cases cited by Plaintiffs, the statute or ordinance at issue was arguably vague and the court considered whether it could be salvaged by an interpretation that limited its scope. Plaintiffs' authorities stand only for the proposition that an ordinance might be saved by a limiting interpretation. None of these cases support Plaintiffs' contention here that the ordinance is facially invalid because of an impermissibly expansive interpretation by the City.

Courts have upheld use of the term "interfere" in statutory and ordinance language over challenges that it is impermissibly vague. In Cameron v. Johnson, the Supreme Court considered a state statute that prohibited any picketing that would "unreasonably interfere" with access to a courthouse. 390 U.S. 611 (1968). When picketers were arrested for violating this statute, they challenged it on several grounds, including that it was unconstitutionally vague. Id. The Supreme Court rejected their vagueness argument, holding that the statute's terminology, including its use of "unreasonably interfere," was sufficiently clear to satisfy the Constitution. Id.

Plaintiffs' dispute is not with the Picketing Ordinance. It is with how the City allegedly applies the ordinance to them. That is an as-applied challenge and not a facial one. Defendants' Motion does not seek to dismiss Plaintiffs' as-applied challenge to the Picketing Ordinance. Since the Picketing Ordinance's use of "interfere" is not unconstitutionally vague, Plaintiffs' facial challenge to the ordinance should be dismissed.

Plaintiffs' argument that the Picketing Ordinance is facially overbroad rests upon their allegation that the City interprets "interfere" to bar pure expression. See Plaintiffs' Response, p. 21 (alleging City police department interprets "interfere" in order "to suppress pure advocacy because of the message being communicated.") This interpretation is not inherent in the word

15

"interfere." Thus, Plaintiffs' dispute is not with the Picketing Ordinance's language but with an alleged interpretation used by the City that, if it actually occurs, would be divorced from that language.

> A law cannot be struck down for facial overbreadth if a limiting construction could save it:
>
> The consequence of our departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.

Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916 (1973) (emphasis added). If the City did interpret "interfere" to bar pure expression rather than physical interference with traffic, such an interpretation could be easily addressed with a limiting construction. By comparison, invalidating the ordinance as overbroad would bar its enforcement in all contexts, a much more sweeping remedy than necessary. "[A] law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications. This is because if an overbreadth challenge succeeds, any enforcement of the regulation at issue is totally forbidden." American Entertainers, LLC v. City of Rocky Mount, 888 F.3d 707, 715 (4th Cir. 2018) (citations, quotation marks, and brackets omitted). Accordingly, the undersigned respectfully recommends that the Defendants' Partial Motion to Dismiss (document #49) be granted.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Individual Defendants' Motion to Dismiss (document #51) and Defendants' Partial Motion to Dismiss (document #49) be **GRANTED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED**.

Signed: July 26, 2019

David S. Cayer
United States Magistrate Judge