# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-00670-KDB-DSC

| | |
|---|---|
| **CITIES4LIFE, INC.,** a/k/a Cities4life Charlotte *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **CITY OF CHARLOTTE,** <br><br> **Defendant.** | **ORDER ON ATTORNEYS' FEES AND COSTS** |

**THIS MATTER** is before the Court on Plaintiffs' Motion for Attorneys' Fees and Costs. (Doc. No. 90). Plaintiffs request an award of attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of $150,382.50 and costs in the amount of $3,086.60 following the entry of a consent judgment by the Court. The City of Charlotte ("The City") opposes an award of attorneys' fees and costs primarily because Plaintiffs are not "prevailing parties" as required under § 1988. (Doc. No. 95). After full consideration of the motion, the Court will grant in part and deny in part Plaintiffs' motion for attorneys' fees and costs.

## I.    RELEVANT BACKGROUND

Plaintiffs, a pro-life organization and four of its members, routinely gather near the medical clinic "A Preferred Women's Health Center" located at 3220 Latrobe Drive to express their opposition to abortion and to communicate with the patients attempting to enter the clinic. Plaintiffs display signs, distribute literature, and engage in other activities to express their beliefs and to dissuade women from entering the clinic. According to Plaintiffs, sometime in 2017 the Charlotte-Mecklenburg County Police Department (CMPD) began enforcing the City's Sign

1

Ordinance against Plaintiffs because of the content of their signs, specifically their pro-life message. Plaintiffs filed this action on November 17, 2017 primarily challenging the City's infringement of their federal and state constitutional rights by means of the Sign Ordinance. After filing an Amended Complaint, Plaintiffs moved for a preliminary injunction to prevent the City from enforcing the Sign Ordinance. The motion was denied in an oral order on April 4, 2019.

On May 10, 2019, Plaintiffs filed a Second Amended Complaint alleging that after the filing of their original complaint on November 17, 2017 the City began enforcing the Picketing Ordinance, § 19-303(c), against Plaintiffs in an effort to restrict their message. The Picketing Ordinance states: "Picketing shall not disrupt, block, obstruct or interfere with pedestrian or vehicular traffic or the free passage of pedestrian or vehicular traffic into any driveway, pedestrian entrance, or other access to buildings, which abut the public sidewalks." As part of Plaintiffs' leafleting practices, Plaintiffs sometimes step off of the sidewalk and into the clinic's driveway or Latrobe Drive in order to approach vehicles on foot and try to distribute literature to the vehicle's occupants. CMPD considered such action a violation of the City's Picketing Ordinance because, in the City's view, it disrupted, blocked, obstructed, or interfered with vehicular traffic. CMPD began citing Plaintiffs under the Picketing Ordinance in August 2018. Plaintiffs submitted throughout the course of this lawsuit that the enforcement of the Sign and Picketing ordinances was the result of a coordinated effort by City leadership and certain employees to use City law to suppress their message and to discriminate and retaliate against them because of their pro-life beliefs and message.

Shortly after Plaintiffs filed the Second Amended Complaint, defendants (which at the time included the City as well as a number of city officials) moved to dismiss all of Plaintiffs' claims

2

against the individual defendants, Plaintiffs' Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) claim challenging the City's Zoning Ordinance,[1] and Plaintiffs' facial challenge to the Picketing Ordinance. (Doc. No. 50). The Court granted the defendants' motion and dismissed both claims, as well as all claims against the individual defendants.

In the summer of 2020, the parties reached a partial settlement agreement on the claims related to the Sign Ordinance but continued to litigate the remaining counts relating to the Picketing Ordinance. During this time, Plaintiffs deposed an expert witness, the parties exchanged further discovery, and the City filed a motion for summary judgment which was fully briefed and oral argument on the motion was held. At oral argument, the Court offered to hold a judicial settlement conference with the parties in an effort to come to a mutually agreed upon resolution without having to go to trial. The judicial settlement conference was successful, and the parties submitted a Consent Judgment to the Court on November 20, 2020 resolving all remaining claims. (Doc. No. 87). The Court entered that Consent Judgment with minor changes later the same day. (Doc. No. 88). The Consent Judgment did not determine attorneys' fees and expressly refrained from making any determinations about the merits of the parties' claims, defenses, allegations, or arguments. *Id.* ¶ 6.

On January 18, 2021, Plaintiffs filed the current motion for attorneys' fees and costs requesting the Court award Plaintiffs $150,382.50 in attorneys' fees and $3,086.60 in costs. The City opposes the motion, arguing that Plaintiffs are not entitled to attorneys' fees because Plaintiffs are not "prevailing parties" under § 1988. Further, even if fee-shifting under § 1988 is warranted, the City argues that Plaintiffs should receive substantially less than the amount

---

[1] The City's Zoning Ordinance prohibited Plaintiffs from using portable signs on any property in the City. Plaintiffs alleged that they had a reasonable expectation to display such signs and their inability to display such signs substantially burdened their religious exercise. The Court dismissed Plaintiffs' RLUIPA claim in its entirety.

requested because (1) they are not entitled to fees for their unsuccessful discrimination and retaliation claims, (2) a large portion of the fee request is barred by the parties' prior settlement agreement regarding the Sign Ordinance claims, and (3) Plaintiffs are not entitled to fees related to their unqualified expert.

## II. LEGAL STANDARD

In enacting the Civil Rights Attorney's Fees Award Act of 1976, Congress created an exception to the "American Rule" that each party to a lawsuit bear its own attorneys' fees. *See* H.R. Rep. No. 94-1558, at 1 (1976); S. Rep. No. 94-1011, at 2 (1976). In doing so, Congress furthered the policy of facilitating access to judicial process for the redress of civil rights grievances. *Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019). "The Act provides accordingly that in any proceeding under 42 U.S.C. § 1983, 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Brandon*, 921 F.3d at 198 (quoting 42 U.S.C. § 1988). Therefore, in order to qualify for attorneys' fees under § 1988, a plaintiff must be a "prevailing party." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). Whether a party is a "prevailing party" within the meaning of 42 U.S.C. § 1988 is a question of law and one the Supreme Court has said it accords a "generous formulation." *Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). A prevailing party should "ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429.

Where a plaintiff is a prevailing party, a court must determine what constitutes a reasonable fee. *See Hensley*, 461 U.S. at 429; 42 U.S.C. § 1988. "[A] 'reasonable fee' is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil

4

rights case." *Perdue v. Kenny*, 559 U.S. 542, 552 (2010). The aim of § 1988, therefore, is to enforce the covered civil rights statutes, not to provide "'a form of economic relief to improve the financial lot of attorneys.'" *Id.* at 522 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

The proper calculation of a reasonable attorneys' fee award involves a three-step process. First, the court must "determine [the] lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to consider the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 244; *see also Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in *Johnson*). Next, the Court should "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

### III. DISCUSSION

**A. Prevailing Party**

The phrase "prevailing party" is a legal term of art, *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001), which has been addressed

5

by the Supreme Court in multiple decisions. In *Buckhannon*, the Supreme Court expressly recognized two appropriate bases for awarding attorneys' fees.[2] The first appropriate basis is by obtaining a judgment on the merits. *See, e.g.*, *Farrar*, 506 U.S. at 121 (holding that even an award of nominal damages suffices under the "prevailing party" test); *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989) ("A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendent lite* or at the conclusion of the litigation."); *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ("[P]laintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail."); *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (*per curiam*) ("Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims."); *see also Lefemine v. Wideman*, 568 U.S. 1 (2012) (holding that a plaintiff who secured a permanent injunction, but no monetary damages, was a "prevailing party" under § 1988 because the injunction ordered the defendants to change their behavior in a way that directly benefited the plaintiff).

In addition to judgments on the merits, settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees. *Buckhannon*, 532 U.S. at 604; *see also Maher v. Gagne*, 448 U.S. 122 (1980); *S-1 and S-2 By and Through P-1 and P-2 v. State Bd. of Educ.*, 21 F.3d 49, 51 (4th Cir. 1994) (en banc). "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.'" *Buckhannon*, 532

---

[2] While *Buckhannon* analyzes attorneys' fees under the Fair Housing Amendments Act and the Americans with Disabilities Act, the attorneys' fees provisions in these acts were patterned upon the attorneys' fees provisions in other "prevailing party" statutes like § 1988. Courts have interpreted these fee-shifting provisions consistently across statutes. *See, e.g.*, *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016).

6

U.S. at 604 (quoting *Garland*, 489 U.S. at 792). Thus, a "prevailing party" is "one who has been awarded some relief by the court," resulting in a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605.[3]

Plaintiffs argue that they easily satisfy the "prevailing parties" test as the Consent Judgment "directly and materially affects the behavior of the City towards the Plaintiffs." (Doc. No. 91, at 5). In particular, Plaintiffs argue that prior to the Consent Judgment, they were not permitted to step into the roadway or driveway towards a vehicle without being cited by the City for a violation of the Picketing Ordinance. The Consent Judgment outlines three specific requirements for Plaintiffs entry into the roadway at the Latrobe Drive clinic, (Doc. No. 88, at 2-3 ¶ 1(a)-(c) ("The CMPD Requirements")), and if those requirements are complied with, the Consent Judgment orders that "the City shall not deem that Plaintiff's entry into Latrobe Drive or into a clinic driveway to be a violation of Section 19-303(c) of the City Code," *id.* at 3 ¶ 2. Furthermore, the Consent Judgment requires that the City leave one or more openings in any barriers that may separate the clinic driveway or Latrobe Drive from the adjoining sidewalk for the Plaintiffs to make the agreed upon vehicle approaches. *Id.* at 3 ¶ 3.

The City responds that Plaintiffs have not "prevailed" for the purposes of a fee-shifting statute because the City remains free to engage in the exact same conduct that Plaintiffs challenged. Moreover, unlike "more typical consent decrees in a civil rights case," the Consent

---

[3] In addition to recognizing these two bases for awarding attorneys' fees, the Supreme Court rejected the "catalyst theory" as a permissible basis for the award of attorneys' fees in *Buckhannon*. The Supreme Court's rejection of the catalyst theory as a permissible basis for the award of attorneys' fees under the Freedom of Information Act (FOIA) was superseded by the OPEN Government Act, which amended FOIA to expressly define a prevailing party as a party that has obtained relief either through a judicial order or a voluntary or unilateral change in position by the agency. 5 U.S.C. § 522(a)(4)(E)(ii). This amendment to FOIA does not affect the applicability of the analysis in *Buckhannon* to claims for attorneys' fees under § 1988 because, unlike FOIA, § 1988 was never amended to expressly define what constitutes a "prevailing party" under the Civil Rights Act.

7

Case 3:17-cv-00670-KDB-DSC   Document 98   Filed 02/24/21   Page 7 of 19

Judgment does not condemn the City's pre-settlement enforcement of the Picketing Ordinance as it "allows for that same enforcement to continue whenever the facts match those that existed pre-settlement." (Doc. No. 95, at 2). In the City's view, it is the Plaintiffs that must modify their pre-settlement behavior, not the City, *id.* at 2-3, and without a determination of wrongdoing in the Consent Judgment, Plaintiffs cannot be prevailing parties, *id.* at 8.

Additionally, the City argues that Plaintiffs cannot be a prevailing party because the Consent Judgment does not afford Plaintiffs any of the relief requested in their Complaint and only has a "limited scope." In their Complaint Plaintiffs requested various declaratory judgments, including declarations that the Picketing Ordinance and Sign Ordinance are facially unconstitutional, unconstitutional as applied to Plaintiffs, nominal and compensatory damages, and other relief. The Consent Judgment allows vehicle approaches "only by Plaintiffs, only at the Latrobe Drive clinic, and only in compliance with CMPD requirements." (Doc. No. 95, at 3). While this may be an acceptable outcome to Plaintiffs, the City argues that it nevertheless fails to make them "prevailing parties" under § 1988.

Contrary to the City's argument, the parties' settlement agreement enforced through the Consent Judgment can serve as the basis for an award of attorneys' fees. *See Buckhannon*, 532 U.S. at 604 ("These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." (quoting *Garland*, 489 U.S. at 792-93)); *Farrar*, 506 U.S. at 113 ("No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant."); *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016) ("The Court has explained that, when a plaintiff secures an 'enforceable judgmen[t] on

8

the merits' or a 'court-ordered consent decre[e],' that plaintiff is the prevailing party because he has received a 'judicially sanctioned change in the legal relationship of the parties.'" (quoting *Buckhannon*, 532 U.S. at 605)); *see also, e.g.*, *Grisham v. City of Fort Worth*, 837 F.3d 564, 569-70 (5th Cir. 2016); *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159 (3rd Cir. 2002).

The Consent Judgment has created a judicially sanctioned change in the legal relationship between the parties. Plaintiffs desire to distribute leaflets to occupants in vehicles going to and from the clinic on Latrobe Drive, which, prior to the Consent Judgment, was prohibited by CMPD's enforcement of the Picketing Ordinance. As vehemently argued by the City in its Motion for Summary Judgment, CMPD could prohibit all types of pedestrian vehicular approaches made by Plaintiffs because whenever a pedestrian steps into a driveway or road to approach a vehicle, he or she almost inevitably obstructs and interferes with traffic—even if the vehicle is stopped. Thus, CMPD's enforcement of the Picketing Ordinance resulted in a complete ban of "pedestrian vehicular approaches." (Doc. No. 76, at 5). Under the Consent Judgment, Plaintiffs may now make pedestrian vehicular approaches if they comply with the following requirements: Plaintiffs must wait on the sidewalk or adjacent curb; may only enter Latrobe Drive or the clinic driveway when a vehicle comes to a full stop; and must promptly end his or her approach or interaction if one or more other vehicles are unable to legally approach, enter, exit, or drive away from a clinic driveway. (Doc. No. 88 ¶ 1).[4] To effectively enforce the

---

[4] The City purports that Plaintiffs never claimed to comply with the CMPD requirements as outlined in the Consent Judgment, including that Plaintiffs did not wait for a car to come to a stop before approaching the vehicle. This fact is contested by Plaintiffs. Plaintiffs point to Daniel Park's deposition in which he testified that cars would typically come to a complete stop before a Cities4Life representative would approach the car.

A request for attorneys' fees should not result in a second major litigation. *See, e.g.*, *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 181 (4th Cir. 1994). Thus, the "prevailing party" analysis does not require the Court to resolve undecided factual or constitutional issues at the terminus of a case resolved by a consent decree simply to determine a prevailing party's

ban on pedestrian vehicular approaches prior to the Consent Judgment, CMPD placed three-foot-tall barriers along the driveway and road to prevent pedestrians from stepping into the roadways. *Id.* at 6. The Consent Judgment now requires CMPD to leave openings in any physical barriers along the sidewalk to allow Plaintiffs to make the permitted vehicular approaches. Additionally, CMPD is to enforce the Consent Judgment for the first such violation on a particular day only by issuing a warning. After a warning has been issued, CMPD may issue a citation. *Id.* ¶ 4. By the City's own words, the City "agreed to make a unique *accommodation* at this particular location and under the unprecedented set of circumstances created by the Consent Judgment." (Doc. No. 95, at 4) (emphasis added).

While the consent decree may not contain an express admission of liability, that is not unusual. *See Maher*, 448 U.S. at 126 n.8 (noting that it is "customary" for consent decrees to not "purport to adjudicate [plaintiff's] statutory or constitutional claims" and often to explicitly state that neither party admits fault). Despite the fact that "a consent decree does not always include an admission of liability by the defendant," the Supreme Court has held it "nonetheless is a court-ordered 'change in the legal relationship between the plaintiff and defendant.'" *Buckhannon, 532 U.S. at 604*. Furthermore, enshrining rights in a consent decree changes the parties' legal relationship in the following procedural respect: if Plaintiffs believe that the City violates their rights in the future, they can pursue a contempt action rather than start from scratch with a new lawsuit.

There are no special circumstances in this case that would support the outright denial of attorneys' fees under § 1988. *See, e.g.*, *Brandon*, 921 F.3d 194 (reinforcing the longstanding rule

---

eligibility for attorneys' fees. The touchstone in cases resolved by consent decrees is a material alteration of the legal relationship between the parties. The Court is satisfied that that threshold has been met here.

that the special circumstances exception is narrowly limited). Importantly, "the degree of plaintiff's success" does not affect "eligibility for a fee award." *Farrar*, 506 U.S. at 114 (internal quotations and citations omitted). "Once a civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award[.]" *Id.* Thus, the City's arguments regarding whether the Consent Judgment afforded Plaintiffs any of the relief sought in their Complaint and its "limited scope" go more to the Plaintiffs' degree of success rather than to the threshold question of whether Plaintiffs are prevailing parties.

In sum, the Consent Judgment includes a new measure that is directly responsive to Plaintiffs' allegations that the City was prohibiting them from distributing their literature and affects the behavior of the City toward Plaintiffs. Consequently, the Consent Judgment has created the requisite material alteration of the legal relationship between the parties.

### B. Calculation of Fees

Having determined that Plaintiffs are prevailing parties in this action, the Court turns to calculating what, if any, attorneys' fees are reasonable. As discussed above, this inquiry is a three-step process. *McAfee,* 738 F.3d at 88. First, the Court determines the lodestar amount by multiplying a reasonable fee rate times the number of reasonable hours expended. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). Second, the Court subtracts any fees for hours spent on unsuccessful claims. *Id.* at 88. Third, the Court awards a percentage of the remaining amount "depending on the degree of success enjoyed by the [party]." *Id.* Throughout this process, the Court should apply the applicable factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-79 (5th Cir. 1974).

1. *Lodestar Amount*

11

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley,* 461 U.S. at 433. "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate" by "produc[ing] satisfactory specific evidence of the prevailing market rate in the relevant community for the type of work for which he seeks an award." *Grissom v. Mills Corp.*, 459 F.3d 313, 321 (4th Cir. 2008). This is generally accomplished "through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the [relevant] market.'" *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).

In this case, Plaintiffs were represented by two attorneys: Stephen Crampton and B. Tyler Brooks. Mr. Crampton's hourly rate is $425.00 and Mr. Brooks's hourly rate is $300.00. The City does not challenge the reasonableness of Plaintiffs' counsel's hourly rates. Nevertheless, the Court finds these rates to be reasonable especially in light of counsel's experience and expertise in civil rights litigation. (Doc. No. 91, at 10-11) (outlining Mr. Crampton's and Mr. Brooks's experience); (Doc. No. 90-1) (Declaration of Stephen Crampton); (Doc. No. 90-2) (Declaration of B. Tyler Brooks). Plaintiffs' counsel supports their fees request with declarations stating their standard hourly billing rates, as well as a declaration from a local attorney familiar with the going rates in similar civil matters who opines that the requested rates are reasonable. (Doc. Nos. 90-1; 90-2; 90-3). Counsel also cites to other cases that have approved similar rates in similar cases. *See, e.g.*, *Fisher-Borne v. Smith*, 1:12CV589, 2018 WL 3581705, at *3-4 (M.D.N.C.

2018); *Eschert v. City of Charlotte*, No. 3:16-cv-295-FDW-DCK, 2017 WL 3840275, at *4 (W.D.N.C. 2017). Based on the evidence before it and the Court's own knowledge of the hourly rates charged by litigants in this district, the Court finds Plaintiffs' counsel's hourly rates are reasonable.

Plaintiffs seek fees for a total of 432.4 hours, with Mr. Crampton requesting fees for 165.3 hours and Mr. Brooks requesting fees for 267.1 hours.[5] Voluntarily excluded from their time are hours spent on claims other than the Picketing Ordinance (to the extent Plaintiffs' counsel believed the hours could be separated). In an effort to omit time entries spent on issues unrelated to the Picketing Ordinance, Mr. Crampton does not seek recovery for any time before February 2020, despite having been involved with the case since approximately September 2018. (Doc. No. 90-1 ¶ 9). He also subtracted 30.9 from his total of 196.2 hours (approximately 15.7%) as excessive, duplicative, or unrelated to the Picketing Ordinance issues. (Doc. Nos. 91, at 9; 90-1, at 19). Mr. Brooks has excluded time spent prior to January 1, 2019, despite being involved with the case since its inception in 2017, (Doc. No. 90-2, at 5 n.2), and subtracted 104 hours from his total of 371.1 hours (approximately 28%) in an effort to minimize any time submitted that was spent on unsuccessful claims. (Doc. No. 91, at 9).

As part of their request, Plaintiffs seek deposition-related and other fees connected to their designated expert David Robertson. Mr. Robertson's report indicated that he was an expert in "civil engineering and more specifically the area of transportation and traffic safety engineering." (Doc. No. 97-2, at 3). He offered opinions about the Plaintiffs' Sign Ordinance and

---

[5] While Plaintiffs laid out a precise calculation of fees requested for Mr. Crampton, (Doc. No. 90-1, at 19), they did not do so for Mr. Brooks. Plaintiffs' total calculation of requested attorneys' fees is $150,382.50. The Court has reviewed the hours requested by Mr. Brooks, and if there is any discrepancy in the hours as recorded in Mr. Brooks's time sheet and the hours Plaintiffs must have used to calculate total requested fees, it is minimal and under-includes rather than over-includes hours.

Picketing Ordinance claims. The City claims that these fees related to Mr. Robertson are not reasonable because he was unqualified, and his opinions lacked basic factual support. (Doc. No. 95, at 29-30).

The Court has carefully reviewed the billing records submitted as documented by Plaintiffs' counsel's affidavits and time records and finds them to be reasonable, including the time sought related to Plaintiffs' designated expert. (Doc. Nos. 90-1, 90-2). Plaintiffs' desire to have an expert was entirely reasonable, especially in light of the City's six experts. *See* (Doc. No. 90-2, at 19) (reflecting time spent reviewing the City's six expert reports). A review of Mr. Robertson's resume, experience, and other qualifications does not show that Plaintiffs' counsel's time spent on Mr. Robertson was unreasonable. Mr. Robertson is a registered Professional Engineer in North Carolina who has over thirty years of experience in the field of civil engineering, including experience in transportation and traffic safety engineering. During his career, he spent ten years with the City of Raleigh and twenty-one years with the North Carolina Department of Transportation. Mr. Robertson's work for the City of Raleigh included accident analysis and reconstruction, extending to what steps could be taken to prevent future accidents. Further, Plaintiffs' counsel's time records reflect a total of 32.6 hours spent finding, preparing, deposing, and debriefing Mr. Robertson. Of that time, 7 hours were spent attending Mr. Robertson's deposition (which the City noticed) and 4.1 hours for travel (which was billed at 50%). This time spent on Mr. Robertson was not unreasonable and will not be excluded from the lodestar calculation. The City does not make any other challenges to the reasonableness of the hours spent by Plaintiffs' counsel.

In conclusion, the Court finds the hourly rate and hours spent to be reasonable, particularly in light of the complex nature of this litigation, which involved multiple federal and state

14

constitutional questions; the time and labor required; the preclusion of other work; the attorneys' skill and experience; and the result obtained. Thus, the Court calculates the lodestar amount as follows: (165.3 x $425) + (267.1 x $300) = $150,382.50.

### 2. *Successful & Unsuccessful Claims*

Once a court has determined the reasonable hours and the reasonable rate, it is "obliged to subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *McAfee*, 738 F.3d at 91. A plaintiff's claim is unrelated if it is "based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Such claims are distinguished from related claims as follows:

> When the plaintiff has failed to prevail on a claim that is *distinct in all respects from his successful claims*, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of *related* claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Id.* at 440 (emphasis added); *see also Eschert*, 2017 WL 3840275, at *4.

Here, the City challenges Plaintiffs' fee request to the extent it seeks recovery for their discrimination and retaliation claims because those claims bore no relation to the Consent Judgment that resolved this case. (Doc. No. 95, at 19-27). If the Consent Judgment had related to the retaliation and discrimination claims, the City argues it would have awarded damages or produced an injunction requiring the City to treat Plaintiffs as it treats others who are similarly situated. What led to the Consent Order, according to the City, was Plaintiffs' claim that the Picketing Ordinance was unduly restrictive. *Id.* at 20-21. Even if fees related to Plaintiffs' discrimination and retaliation claims are not categorically excluded, the City contends that any fee award should be dramatically reduced to reflect the wasted time and energy that those claims required. *Id.* at 26 n.4.

15

The City also argues that much of Plaintiffs' requested fees are barred by their previous settlement of the Sign Ordinance claims in October 2020. (Doc. No. 95, at 27-29). This partial settlement agreement resolved eight claims from Plaintiffs' Second Amended Complaint and required each party to pay their own respective attorneys' fees and costs related to those eight claims. The parties further agreed that the attorneys would not seek fees or costs "arising from or related in any way" to any of those resolved claims. The City asserts that Plaintiffs are violating the agreement by attempting to seek fees related to these eight previously resolved claims.

Plaintiffs acknowledge that they have not succeeded on every claim, but they have attempted to assist the Court by submitting only time for which compensation is warranted by attempting to trim their hours to those worked on the Picketing Ordinance claims or claims inseparably intertwined with the Picketing Ordinance. With regards to the prior settlement agreement, Plaintiffs argue that the substance of the partial settlement agreement was reached in early 2020 and the fact that the parties took several months to finally obtain approval and signatures from all the players cannot operate to bar Plaintiffs from recovering fees for the time spent on matters intimately bound up with their successful claims.

Here, Plaintiffs had mixed success on their claims and have only succeeded on claims relating to the Picketing Ordinance. With respect to the retaliation and discrimination claims, the Court finds that Plaintiffs' claims are not so distinct that hours expended in pursuit of the retaliation and discrimination claims can easily be separated from their successful claims. Because of their overlapping facts and legal theories, any parsing of successful from unsuccessful claims for purposes of billing would be a difficult and fraught enterprise.[6]

---

[6] Notably, the City does not offer a specific number of hours or recommend a certain reduction if the Court were to exclude time spent on the retaliation and discrimination claims.

While it is clear Plaintiffs' counsel attempted to segregate hours worked by claim, there does appear to be some overlap with the previous resolved claims by settlement agreement in 2020 and the Picketing Ordinance claims. For instance, a time entry for Mr. Brooks on December 13, 2019 states that he received and reviewed the City's six expert reports. (Doc. No. 90-2, at 19). Only two of the City's experts offered opinions on the Picketing Ordinance and the other four offered opinions on the Sign Ordinance. Additionally, Plaintiffs have submitted time for the depositions of Daniel Parks and Mr. Robertson. These depositions covered Plaintiffs' claims regarding both the Picketing Ordinance and the Sign Ordinance. Keeping in mind the exclusions already made by Plaintiffs' counsel, the Court will further deduct 10% of the hours requested by Mr. Brooks to account for this overlap. This 10% reduction produces the following calculation: (165.3 x $425) + (240.4 x $300) = $134,807.50.

3. *Degree of Success*

Lastly, the Court must consider the extent of success when determining a fee award. *See Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436. The Supreme Court has observed that a fully compensatory fee may be an "excessive amount" when a plaintiff has achieved only a partial or limited success. *Id.* In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorneys' fees at all. *Farrar*, 506 U.S. at 115. For example, a victory that does little more than provide "the moral satisfaction of knowing that [one's] rights have been violated," would justify only a modest fee award or no fee award at all. *See id.* at 114.

---

This suggests that even the City cannot separate the time spent on the successful versus unsuccessful claims.

17

As a starting point, the Court looks to Plaintiffs' requested relief with respect to the Picketing Ordinance as outlined in their Second Amended Complaint. Plaintiffs requested the Court enter declaratory judgment finding the City violated their constitutional rights, declaratory judgment finding the Picketing Ordinance is unconstitutional both facially and as-applied, declaratory relief establishing the meaning of the Picketing Ordinance as suggested by Plaintiffs, declaratory judgment that Plaintiffs have been the subject of unconstitutional retaliation for engaging in protected activity, a permanent injunction preventing the City from enforcing the Picketing Ordinance, and nominal and compensatory damages as appropriate. (Doc. No. 48, at 74-75).

Both Plaintiffs and the City succeeded in certain aspects of this litigation. Plaintiffs did not receive any of the declaratory judgments they requested, nor did they receive any nominal or compensatory damages. They did, however, accomplish injunctive relief in the form of the Consent Judgment that permits them to make certain vehicular approaches provided that they comply with the CMPD requirements. Plaintiffs accomplished more than the "technical victory" won by the plaintiff in *Farrar*, who "accomplished little beyond . . . the moral satisfaction of knowing that a federal court concluded that his rights had been violated in some unspecified way." *Farrar*, 506 U.S. at 114. Yet, the lack of damages recovered and the lack of formal declaratory relief warrant a reduction based on limited success.

On balance, the Court concludes that Plaintiffs were only 25% successful in their claims challenging the City's Picketing Ordinance, and thus, a 75% reduction in fees is warranted. With this adjustment for partial success, the Court will award attorneys' fees in the amount of $33,701.88.

**C. Costs**

Plaintiffs seek $3,086.60 in costs for travel expenses and Mr. Crampton's *pro hac vice* admission. Additionally, Plaintiffs filed a separate Bill of Costs, (Doc. No. 92), requesting another $3,023.25 for clerk fees and fees for transcripts. The City raises no objection to the costs proposed, so the Court will award Plaintiffs the full $3,086.60 and order that their Bill of Costs be taxed to the City.

## IV.     ORDER

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs, (Doc. No. 90), is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs are hereby awarded attorneys' fees in the amount of $33,701.88 and costs of $3,086.60.

**IT IS FURTHER ORDERED** that Plaintiffs' Bill of Costs, (Doc. No. 92), be taxed to the City in the amount of $3,023.25.

**SO ORDERED.**

Signed: February 24, 2021

Kenneth D. Bell
United States District Judge